Following the following case numbers 1 7-6 5 2 7 the United States of America vs. Robert Bertram jr 1 7-6 5 2 8 the United States of America vs. Brian Wood 1 7-6 5 4 2 the United States of America vs. Robert Peavler case 1 8-5 0-0 1 the United States of America vs. James Bottom and 1 8 5 0 0 2 the United States of America vs. Brian Walters Oral argument is 30 minutes to be shared by defendants and 30 minutes for the plaintiff. Mr. Marcus Mr. Chief Judge may it please the court. My name is David Marcus. I represent Brian Walters and West bottom I will be speaking on behalf of all five gentlemen this morning for 15 minutes Then mr. Wicker will speak for 10 minutes and I'd like to reserve five minutes for rebuttal that works. Thank you This is a unique first of its kind Prosecution I say that because it involves real patients going to real doctors Getting real prescriptions which were sent to a real laboratory which conducted real tests The government's theory in this case because there were no lies made on the forms No lies made on the claims and everybody agrees that so the government agrees. There was no Express misrepresentation made to anthem or anyone else. The government is proceeding on an implied theory of Misrepresentation and the government's theory is that the misrepresentation that was implied deals with medical necessity. In other words that the laboratory Impliedly said that these tests were medically necessary That's the theory that the government proceeded on the problem is that theory is untenable The reason it's untenable is because labs cannot and do not Represent medical necessity when they run a test or when they submit a claim So in this case and in every other case with a lab, what happens is they get an order along with a specimen They don't get the patient file. They don't meet with doctors They don't see the patient and so they're obligated to run the test so long as they have a valid prescription, which they had here and so In this case and and the Office of Inspector General has said So labs are not in a position to second-guess doctors or to determine medical necessity They just can't do it. They're not in that position How far does that principle go? I mean you have a medical test sample sitting around and someone loses sight of it you find 50 samples five years later Hey, we better we better finish the test and bill for it, right? So that's how that works unless the prescription becomes invalid for some reason The answer is yes, and so what is I know it's it's an amazing proposition but it's true and the reason is labs take the risk that when they run that the Insurance provider may not pay for it. And so Delay is allowed when we test samples the Medicare provisions say if you're going to test after 30 days Laboratory, this is how you should bill for it. This is how you should Mention on the how to bill for it. Do they tell you to No, no and that that's critical so under the Medicare provision It says on the form if the delay is more than 30 days put the date of service not the date the specimen was collected and this is key judge Sutton because Anthem or anyone else could put on the form. What is the date the sample is collected now in your five-year example? It's possible that there's a regulation that says after a certain amount of time the prescription becomes invalid We don't have that here. There's no allegation or proof of that here But their point the point of the whole case is everybody knows at five years ten months it was absurd for something that's usually done in 24 hours or 48 hours that that's just a common-sense point and You can have intentional fraud and you can have fraud by omission and that's the theory So so in this case, there was no omission though. The lab can't say at what point it becomes medically unnecessary That's not up to the lab. It's up to the doctor to say hey We don't want that anymore or it's up to Congress or someone else to say at some point the prescription becomes invalid Congress Just by the way said for opioids Prescriptions are only good for 30 days So if you come into a into a pharmacy a year later with a prescription for oxycodone the pharmacist won't fill it and and by the way with a pharmacist the Office of Inspector General has said a Determine medical necessity So if someone comes in to try to fill oxycodone and they look all drugged out The pharmacist shouldn't fill it that the Office of Inspector General puts that duty on a pharmacist It says the exact opposite with respect to a lab. It says there is no duty How a lab can't determine medical necessity and and shouldn't we shouldn't be? Asking labs to do that. They're not doctors. They're not The line is no no fraud no schemes to defraud That's a very general concept and it's been applied generally in wire fraud and it's been applied to omissions in that setting and The question is whether the same language has a similar application in health care fraud. That's all that's going on I agree. Absolutely. So the jury, you know got many of your arguments. That's why your clients You know wanted so many claims, but the jury so some sense here It's the six to ten month ones that they focused on. I think quite understandably Well, there were a lot of six to ten months on one that they acquitted on and I know that's not that doesn't determine anything But there were plenty of counts for six to ten months that they acquitted on I I guess the on the omission point because you can certainly Commit fraud by omission if the form for example said when was the date of collection and That was left blank on purpose to deceive To deceive anthem and others that would be fraud, but there is no question like that on the form I but why doesn't that just make it a tribal issue of fact? I mean you might win with some juries. You might lose with some juries, but you're allowed to put in front of them the idea that they advertised this is 24 or 48 hour turnaround and it's 6-10 months and Then you look at the explanations. Why the equipment wasn't working. They were a new business. They're trying to make money You certainly have intent you certainly that's you know, the motive point isn't hard to find Here. Well, the motive was to Have a successful lab. I don't think that's motive of a crime But but let me let me get to the omission point because I do think this is the debate and this is a this Is the critical point which is a jury's free to find? Evidence of a crime if there was some evidence in support of an omission. There is no omission here. And so Under a case that the government doesn't address that we cite in a brief groat which comes out of the District of DC a District judge there in a very similar circumstance just found that labs cannot second-guess doctor's orders but Maybe I'm wrong about this, but I suppose the response is going to be The question is you can only bill for things that are medically necessary So in six to ten months One does not need any degree For something that's normally 24 48-hour turnaround to know that six to ten months doesn't sound medically necessary When that's the way the service is offered. So I guess my response to that is Anthem can decide we're not going to pay if we anthem determine it's not medically necessary That's in the contract But it's not the lab isn't committing fraud if it submits these claims because it can't certify Again, there's no express certification. It can't impliedly certify that these tests are medically necessary. It's The the law is that they can't and shouldn't do that and and we we know why they shouldn't do that because in the six-month example here all of the doctors said the government's witnesses said it is of Some use we like to look at these tests historically, but it doesn't matter whether they said that or not Because the lab isn't in that position. What if we want to create an affirmative duty for a lab to say at six months or whatever time it becomes You shouldn't run the test then we need to say that either We need to say it by regulation or there needs to be a question on the on the form There needs to be some indication to The laboratory when this becomes a crime so This probably isn't a very good analogy, but I'm just trying yours. I get your point that there's some law out there There's some custom out there that suggests they're not supposed to be engaged in this medically necessary inquiry But there's just a common-sense component to this which I think does allow you to put it within scheme or artifice to defraud I go up to McDonald's. I Pay for my Big Mac. They say, okay, we'll get it to you in six months, you know, no, it's a fast-food place Give me my money back. They said no No one said anything about when we're gonna give it to you. It'll get to you in six months Come back here. We're not giving the money back now I don't care what the rules are as to what fast food operators can or can't do That's that's fraud and I think there's a similar thing going on here that it's a 24-48 hour thing and They're billing for stuff. That's six ten months late and they have some not so great explanations for it Which have nothing to do about what they can and can't do with medical necessity They have to do with trying to make money I guess two responses first in this case We know that delay more than 30 days is permitted unlike the McDonald's example so so in this case There are Medicaid and Medicare regulations that say you can absolutely test after 30 days That helps you show it's probably not fraud for a couple months No, but but so the jury didn't find fraud for anything fewer than six months But how is the lab supposed to know when it becomes fraud? They're not they they're not in the business of determining medicalness very easy We found these samples the machine wasn't working. We're gonna process this we completed the test, but we want you to know what happened boom, look very easy to do no one's gonna say that's fraud and we all know the incentives why they might not have done that and That's the that's the risk they took so so everyone knew About how long it took to test the test went back to the doctor's office anthem has the access to those patient files Anthem made the decision not to ask the question of when the test was collected They could certainly ask that question on the form What if we say if we if we go with that theory that at some point some common-sense point a lab has to step In then we're going to be subjecting lab owners and others to criminal liability if they test in 45 days in 60 days There is no line There is no regulation and anthem didn't ask the question and therefore labs when they have a valid prescription Should run the test if a doctor says I no longer need it They could rescind the order if anthem doesn't want to pay they don't have to pay Unlike the McDonald's example so anthem came in and they say we're not going to pay this because it took too long Labs run that risk when they run these tests After that amount of time they certainly run the risk that the insurance provider isn't going to pay That's that's a that's a valid risk that they run But to impose criminal liability when they're under no obligation to second-guess a doctor's order even if it's an older order Because we have regulations that say You can test after 30 days so so The position here is The lab can't Draw that line. It's up either to the doctors to rescind or it's up to anthem And by the way judge so in looking at every Sixth Circuit health care fraud prosecution. There is no Prosecution like this. Well Paulist didn't didn't help you any Actually, I think I think Paulist doesn't hurt us and the reason Paulist doesn't hurt us and I know mr wicker is going to talk quite a bit about Paulist, but Paulist involved a doctor and this court said the doctor lied. So there was a fact capable of proof-or-disproof the amount of stenosis and the doctor said there was 80% when there was 30% and so the court said that's that's a representation capable of Truth or falsity and the doctor lied. So in Paulist Persuade all of those health care fraud cases I just want to make sure I'm getting your point That I'm listening The you can have a mission you're acknowledging you can have omission frauds As there has this happened with other fraud statutes. We can't say that's not true here but you're saying you can't have an omission fraud case when the defendant has no authority to Mention the thing that's the bad omission. That's your that's the essence of your point That's the essence of the point and I would just under what's your best case for that So there's there's no it's hard because there's no there's never been a prosecution like this So I'm not to be a health care fraud case Tell me tell me a wire fraud case that where what you're saying is true It was a bookkeeper and they said we're not allowed to we're not allowed to say that I understand why I thought about saying it. I wanted to say it, but we're not allowed to say it So so I haven't found a case where under there's a theory of an implied Implied certification of a fact where the person didn't Certify it. So the best case we have is this case out of the DC the District of DC groat in which and the the site for that is 269 F sub 3rd 155 it was just decided in December of 17 and and the court said a laboratory may rely on the ordering physicians determination of medical necessity Um labs do have to make sure that there's no false or incorrect Information in the claims form that they're doing they certainly have to do that And so I think our best case is a case that the government cites this ambulance case medlock So that's a non doctor case and the government says look there are cases where non doctors can can lie and that's certainly true so in that case the Sixth Circuit the Walking they were certifying That the people there were one person in the ambulance when there were two so there's this idea that in that case there was an ally and Here in this case. There's not I see my 15 minutes went faster than I thought You'll be back up I'll be back. Thank you judge Good Morning and may it please the court like mr. Marcus I want to speak on behalf of all the defendants and I want to start by taking up judge Sutton's question about intent and motive in here And I believe the facts are quite different in this context in this kind of case And I want to tell you why I believe that As you heard there were no false statements of fact there were no representations that were not true What the government's theory was that there was an implied? Representation about medical necessity, but the proof throughout the case was that medical necessity is a matter of opinion Doctors can have different beliefs about when a test is medically necessary When a test has value what that amount of value is at any particular point in time and of course there was evidence and testimony from the defendants expert that These tests do have historical value there was testimony from the government's witnesses that the tests do have No one's ordering these no one's the prescription a funny term for the test But no one's ordering it for something six ten months later I mean I get the idea that it's useful historically, but It just defies reality well certainly they didn't order it with the idea that It would be delayed, but once it becomes delayed does it become useless. That's the question I just Start I Get the idea that it's there in a tough spot particularly if you're allowed to do it past 30 days, but Six months ten months seems crazy. It just looks like five years to me. It just seems so beyond Anything reasonable, but what did what the witnesses testified is that even months down the road? If the test is reviewed with the patient you see a positive result the doctor has an opportunity Let's talk about this Let's see what what you were doing back at that time when you slipped off the wagon Or a doctor who's taking over the the management of a patient may go back and look at all the tests in the chart to see the progress, but the important thing is that issue is a matter of Opinion and reasonable doctors can have different ideas about when a test is medically necessary and what value it has But what the what Paul is tells us is That on matters of opinion the government has a little bit different burden It has to show that the defendants really didn't believe that opinion and Look back at the evidence and see what the evidence is that the defendants Really didn't believe these tests were medically necessary. We have a Great deal of evidence on the other side and that comes from things like Several employees asked the defendants. Is it okay to to test these samples even though the tests were delayed and Uniformly, I mean there's Lisa Johnson on the other. I mean is a jury question. I mean we can't We can't just spend our time talking about the stuff that supports your side. We have to talk about The evidence that supports the government can since the verdict goes in their direction certainly your honor But what Lisa Johnson testified to is that she asked the owners about these tests and she was told we've looked at this We've talked to our lawyers. We've talked to our billing company about it We believe it's appropriate to bill for it. And the question is not what did Lisa Johnson believe? But what was the It might be what she said to people Well, certainly in other words, I don't I don't think this is medically necessary So they heard that and they ignored it and she's a lab director. Well They heard it, but they didn't change their opinion Well, I mean what they go to their lawyers and the lawyers say well after 30 days you can still do it We don't know how far this goes let's push the envelope and I Don't know you push the envelope you push the envelope It goes off the ledge sometimes well the question still is this is not a represent a misrepresentation of fact This is an implied Representation about what the defendants are. So what's the evidence of what the defendants actually believed and all that evidence from? Discussions with employees from the emails that that they sent at that time shows that they believe that having some positive value To the treatment of the patient met the requirements for medical necessity and they believed that these tests Still had medical medical value to the patients Even though they were delayed several months Does the case I'll talk about necessity versus value The case law does not talk about that your honor and that's one of the other problems in the case because the government didn't offer any clear Standard of what medical necessity means Some of its witnesses talked about it has to be potentially useful in the treatment of a patient Another witness says it has to be actually used in the treatment of the patient And of course the lab is not going to have any idea whether a doctor After it receives the test is going to actually use it other witnesses for the government talked about If it has any positive value at all Then it meets the standard of medical necessity and the evidence shows that it's this this third Standard that the defendants believe was appropriate and that's what they were thinking that was the opinion they held when they submitted these cases these These tests for payment and the government has the burden it has to show that this Opinion was not actually held not that they were wrong People have opinions that that that we may disagree with but they have to show that the defendants actually did not hold the Opinion that they were claiming to have and there's no proof of that below If there are no other questions, I'll reserve the rest of my time for mr. Marcus, okay. Thank you Good Morning your honors. May it please the court Kate Smith on behalf of the United States I think your honor judge Sutton you hit the nail on the head with this case. This is a common-sense Case common-sense defines how these tests are used by physicians This is not some particularly complicated area of the medical field Common-sense tells you when a doctor orders a test They want that test to use the results in the care of the patient and that is how medical necessity was defined Throughout this trial. It was defined by every insurance witness and it was designed. It was defined most importantly by our expert witness Dr. Andrea Barth well, the self-refined physicians who also testified said that's what they expect They expect that those test results are returned in time for them to use them when they're treating the patient now The lab is an incumbent on, you know anthem or the government to put information about you know test ordered You know January one Here's the date of the test the test actually done. I mean in other words if this matters and it goes to medical necessity I guess I have some sympathy with the point that why don't you have a place to point that out If you think it's material or someone thinks it's material you should ask the question Yes, your honor two reasons one. That's not how our health care system works It's just not the health care form the claim form is the same form across all insurance providers It's the same form whether you're billing for open-heart surgery or whether you're billing for a lab test They could not possibly design a test form that answers every single question That could be used to defraud an insurance company The second reason then is and this goes back to the common sense. This was so preposterous This was a business entity that was run on turning around test results in 72 hours Even the defendants own expert said I fire labs when they don't do that when they return results too late this was never something that could have even been contemplated as a point of fraud because a Normal relationship with the physician's office would prevent this because normally the doctors would understand they were ordering these tests They would be waiting for the results. They would be expecting them That's why this case is unique because the facts of the case are unique the dynamic between the self-refined clinics and the lab Performing the test was incredibly unique. That was the only reason this fraud was possible was because they had the consent through Dr. Wood and dr. Peebler to test these thousands of samples whenever they felt like it now That is not a normal dynamic and that's not something that an insurance company could prevent And that's not how the health care sought fraud system works. I'm making sure I'm not losing track of the point What you just described would suggest why the doctors? Committed fraud. I'm not sure that proves why the people doing the tests committed the fraud Well the people doing the other words if the doctors say I don't care when you you know, just do it You know and you're maybe you're skeptical. You're thinking wow, you're just trying to milk the government to make all this money But you're still told Do it whenever you need to do it, and I'm sorry the machine broke down, but just do it whenever you need to do it I'm right that people got in trouble here for doing the test not just the doctors who ordered it, correct? So there's a distinction between the doctors who signed the order form and the doctors who decided that these tests could be tested Whenever the only doctors who decided that these tests could be tested whenever are the doctor Defendants the doctors who saw the patients who signed the order form the eight of them testified at trial they testified Several things when they did not know they were ordering this expensive confirmation test They were signing a patient exam form it had a pre-checked box And they did not realize they were ordering an $1,800 test They and some of them said I would have wanted that test But they didn't understand that that change had happened when the defendants started this lab Then you also had them testify that they understood when they issued that order that the results would be back By the next time they saw the patient I think that the doctors here were duped they were duped by the defendants who were controlling them who own the self-refined Clinics as dr. Wood and dr. Peevler But the action here that gave rise to the criminal liability was Exclusively within the control of the five Defendants they were the ones who decided we're going to put these thousands of samples in the freezer And we're going to test them when we feel like it when our lab is up and running and here the reason for the delay does not matter and The jury heard a lot about the reason for the delay the defendants said we wanted to test these as soon as possible that really Is beside the point the point is that they decided to test those samples anyway six and nine months later That they created this system where you had this absurd result that anthem tests were being run Between six and nine months after the patient had been seen and the jury heard that number a number of those patients were no longer even Going to self-refined they heard that some of those physicians were not even working at self-refined when the tests were ordered The argument that I heard from defense counsel focused entirely on the sufficiency of the evidence question and really what they're saying is as a matter of law a Lab cannot be responsible for the claims They submit to a health insurance company in the terms of health care fraud and that is just not Consistent with the facts of this case or at the standards and expectations of health care providers Even if they are not physicians And I want to resist calling these prescriptions because the only people who called them prescriptions at trial were the lawyers That's not what they are. We're really in a different category of order forms for services by a laboratory professional And the jury heard from the billing person from the laboratory director and from every single health care insurance representative that the lab is Responsible for billing for medically necessary services and the lab certifies that every single time they submit a claim What does that mean? Are they allowed to say it's no longer medically necessary. They are allowed to say it's meant It's medically unnecessary. Absolutely, and you heard the salesperson Kevin Robeson say when he started pitching doctors He had to make sure they understood what medical necessity meant You heard Derek Hawkins the one who was directed to change the order form at self-refined He changed that order form so that premier talks would get paid He didn't change that order forms that had anything to do with self-refined He changed that order form because dr Wood told him they had to have that box checked so that premier talks could get paid for the test What would happen if a lab they have it they realize oops, it's been in the freezer for a couple months Maybe we shouldn't do it. They responsibly called the doctor's office doctor's office says yet. Just run it Just do it. I don't care if you do it in eight months. They do it Could they still be held liable for health care fraud because it was not medically necessary Yeah, I don't think that would be criminal health care fraud But I still an eight month old test in my hypothetical that that's a one single test Right, but I'm just okay and and they they did their due diligence they went back to the physician They said do you still want this? I still think that there is an inference. I think their theory is What happened here is sufficiently similar not to be criminal it's sufficiently similar because they got the orders it didn't have a time limit on it and They ultimately did the test and and they think that you know, if the doctors cared the doctors would have told them Right, but the doctors didn't know it is not similar because the doctors didn't know I guess I don't understand that piece So I'm a doctor. I order a test. I Expected to be back by the time I see my next page the patient the next time Patient shows up in my office. I'm like, where's the lab test? I didn't get it. Why don't the doctors know? I now know I don't have it What the doctors were signing was a patient exam form and sometimes just a pill count form so that's a visit where the doctor's not even there and They would see the patient they'd make notes of the visit what was discussed. They'd sign the form They'd sign a patient exam form but on that patient exam form a box was checked and it said I'm ordering Confirmation of all the urine drug screen tests and some of the doctors not all the doctors testified They didn't understand that that meant I am ordering they thought it meant I'm ordering some tests, but I'm didn't understand I'm ordering this $1,800 test this confirmation this quantitative urine drug test. So that was some of the testimony That's why I'm saying that some of them did not understand what was going on And again, you have the structure of this practice, which is not that these physicians are in there every single day seeing substance abuse  They have other jobs elsewhere and they are following a protocol set up by defendants wood and defendants peeveler They are following the normal course of practice the jury heard from dr. Coates that he he couldn't change that He would lose his job if he decided to make other decisions about how patients were treated but I'd like to get back to Your example of just the single test and and I think that the delay here is what makes it fraud And if you can pick one single example of somebody making a mistake I'm not going to bring that fraud case because you're not going to have the intent that you would need but that's not what Happened here. The defendants did this on purpose. This wasn't an accident They didn't find these samples back in the freezer and call the physicians and say hey Do you still want them and and frankly even if they had done that? I think that they would still have some civil exposure because how you define medical necessity is not just some value That is not how it works doctors Don't just get to give somebody a chest x-ray every single day their lives because they think it'll help them find cancer earlier That is not how insurance pays for medical Medical tests it has to be used in the care or the diagnosis of a patient And that was consistent across the insurers It has to be consistent with good When they decided that these tests were not medically necessary and I'd like to talk a little bit about these anthem claims because they were the counts of conviction and They were a little bit unique. There's one feature in particular the jury heard from the anthem witness Nancy Oser and She testified that before August 15th 2011 before the contract was signed premiere talks could have billed for those tests They could have submitted bills to anthem, but they would have been paid out of network So the only reason they waited to test those anthem claims was because they were going to make more money It had nothing to do with whether the anthem patients needed their test results It had nothing to do with whether the doctor called and said actually I don't need these until six months from now when my patient Is no longer at this clinic, and I don't work here This was exclusively within the decision-making of all five defendants, and they were the ones fraud to Delay a little bit to make sure there's coverage. I Mean that must happen all the time. I don't think that does happen all the time I think I don't think that businesses are setting up and saying we're gonna we're gonna bring in samples that we know we cannot test that we have not even ordered the equipment for and Just wait because these are these are tests that people are expecting Results back and we are making promises to the insurance company that they are going to be medically necessary We are making sure that the requisition form meets the medical necessity requirements and when you on purpose Decide to ignore those rules and to do what is going to make you the most money. I think that is fraud I've had two Sentencing questions one Which is just every lawyers nightmare It's not raised so I'm just mentioning it and if either if you want to talk about it later You can or you know what to say about it. Now, that's awesome. Also But this one of the sentencing provisions that was used for an enhancement It's to be one point one again. I'm not expecting you to know the answer I'm just telling you what it is but it says you can get an enhancement in a case in which I'm now quoting the defendant is convicted of a Federal health care offense. That's this case but then it says involving a government health care program and I was just puzzled by that since The convictions were about anthem and this wasn't Medicare Medicaid or chip and I think I think that's what that means So they didn't raise it But I think it would make it made I think it probably made a difference in the sentence So I just was curious. I suspect you don't Know why that is which is fine. But if you want to think about it, I'd be curious I'm not a big fan when I if I see a potential problem in a sentencing of saying well, it's forfeited We'll wait for the 2255 in a case in which they have 14 month sentences. That seems odd to me. So You probably don't know the answer Ask a question. Is that the enhancement that drove the loss amount? Yes, exactly because I think that enhancement allows you to use this prima facie evidence what you bill and I think if you don't have that The the loss is harder to show So it would make it a little harder for you to show the loss amount you showed and probably would have dropped the range two things I think that The the testimony at trial was that they were billing all of the health care providers in the same way And so they were billing anthem in this manner It was exactly the same as they were billing health care fraud And I think that in terms of using those figures for a loss amount that's appropriate Even if this was not a health care fraud case, the sentence should be enhanced for the loss How did this Even though they were acquitted on those other counts the the loss amount figures that were used In the sentencing were only the anthem loss, right? Which I think judge Sutton is saying aren't tied to any particular government program is involving a government health care program understood but but we still enhance settle Sentences for loss amount to any victim. Oh, so you're using the acquitted conduct that you have authority to use acquitted conduct And there was government health care fraud that was acquitted. No, that's not what I'm saying. I'm saying if we had a wire fraud case against Jane Doe who lived down the street and she was convicted of wire fraud her we would still use the to be 1.1 loss amount Enhancements the judge would still go through an exercise to determine what the intended loss was of the fraud But you couldn't use this particular provision because it requires government health care program, correct? But I'm saying even without that the government Okay, so the real point is you think you could have shown this loss anyway harmless there That must be the government put on proof of what the intended loss was to the victim in this case, which was anthem I got it. All right. Well, maybe that is the answer and then the other one is the Walters that he was a manager supervisor and we've got a case that says you've got us need a specific finding of Supervising somebody that was actually involved in a crime. And so this is something they did argue So it's a little more fair, but that seemed like a slight misstep in the district court It's just vent a judge van Tatenhove, correct? So anyway, did you think there was enough finding? Did you think this was harmless if there wasn't what was your take on that? I do think that there was sufficient evidence to hold that Brian Walters was a manager in the context of this crime Absolutely what the jury heard to support that was that he was listed as the president of the company He was the one who was out there making those first promises to health insurance companies He understood what was required of him. He was out there talking to other laboratories about what could be This camper case of ours requires an actual finding at sentencing by the district court judge on this point  Judge did discuss why that enhancement applied I don't have the direct quotation in front of me But I do think that he made some findings about what his responsibilities were at the company that contributed to him getting that enhancement We can submit additional briefing if you want us to highlight exactly what those findings were I mean it either satisfies this camper the test or it doesn't so we'll figure that out Okay, but I do think that the facts in the record certainly support and the facts identified in our brief on the sentencing objections identify exactly what makes him Appropriate to receive that enhancement and I know it's a little bit unusual where you have four of these five Defendants receiving an enhancement for their leadership roles But that was the testimony at trial was that they were the ones directing the company what to do They were directing the billing professional the laboratory director They were telling all of those people even the CEO what to do to make this happen And so I think the facts support that and without having the judges specific words in front of me I think that his finding was entirely appropriate with respect to those leadership enhancements Under the relevant standard of review for that But just briefly before I'm out of time You know this they were not in a tough spot here this was not a tough spot I know they keep talking about this Medicare regulation that says you can hold samples for 30 days That's not what that regulation says that regulation is a billing direction Chris Kaiser testified as to what that meant and it's not talking about urine samples. It's not talking about substance abuse patients It's talking about every lab test in the history of the medical universe What you do if a doctor decides I want to test this blood sample two years later You use this particular date. It says absolutely nothing about medical necessity and that you mean if a duck if for some reason you've collected something already and a doctor says oh Yeah, I know. I have this sample sitting around now. I'd like to affirmatively Order it Yes, yes So the the regulation that they're talking about says if a sample has been held for 30 days It's deemed archived and once it's deemed archived if you are then going to test Something for it a blood sample any kind of sample it it still needs to meet medical necessity The regulation is not talking about medical necessity at all It's just trying to contemplate every scenario in which a doctor might say. Hey, I'm treating this patient for cancer I really need to know what their blood test says when we started this procedure in order to make a decision now That's not what was going on here. The doctors were ordering the test and they expected them back With before they saw the next patient they expected them back Like all of premier talks as other clients expected them back within 72 hours And that's what premier talks was doing for everyone else It was only these self-refined patients that they decided that didn't matter So it's really not a tough spot The correct thing the easy thing that the lab director herself said is you send them somewhere else? Self-refined had a relationship with another lab Brian Walters had a relationship with another lab from his other his other business They would have been happy to test these thousands of samples and get them back We would not be here if that's what the defendants did. It's the five defendants deciding We get to control this We decide when we're going to test these things and that both goes to their intent and it betrays how Unnecessary these tests were and just a common-sense way when you order a sandwich and you're left standing there You expect someone's going to tell you what's going on and and that's even assuming you understand You've just ordered a sandwich which I explained was not always the case here with the physicians at self-refined And this is just so far outside the bounds of what is normal and what common sense tells you is okay that it That's what makes it health care fraud. This is it's not unusual For the government to hold providers responsible for intentionally billing for medically unnecessary tests. There is nothing new here Just briefly on The Paulus argument, I think that this argument that there might be some value to the test is Is just not supported by the case law especially with the Persaud decision and the Paulus decision and both of those cases stand for the proposition that all this is you know, That's just affirmative lies That's the way I read that case That's certainly how we charged it your honor But that the judge's order when they threw it when he threw out the rule 29 was that this is too hard to say It's too hard for somebody to make this decision on what is medically necessary in us in reading stenosis So but they both stand for the proposition that if the jury hears conflicting expert opinion about what is medical necessity and that's really all that they're saying here is that is their basis for their Sufficiency the evidence argument if the jury hears two versions of medical necessity They are entitled to credit one of them and that's what they did here The question isn't whether it's really medically necessary, but whether or not the doctors, I'm sorry the lab themselves knew Didn't hold an opinion that it could have been medically necessary, right? Well, we have to prove that the tests were medically unnecessary and well, not only that they were medically unnecessary But that the lab Didn't believe they were medically necessary correct and that was the next sentence I was gonna say we also have to prove they knew and understood that and they build these anyway And I think that's why you see the conviction you see where all these samples were held more than six months They had an email from from defendant Peebler that said I believed it was legal to test these up to six months All the counts of conviction were after six months, but you also just have how they treated every other sample You you have clear testimony. They understood the lab had to bill for medically necessary services you saw that in emails you heard that from the people working at the lab that this was their obligation and Then you have how they were treating everyone else's samples as evidence that they knew that these tests were not medically necessary And then just the factual background that three of them were medical doctors and two of them worked at drug labs. So It's not a stretch for the jury to see that they understood these were medically unnecessary You also have their employees directly telling them these are not medically necessary How do we substantiate the medical necessity of these tests and they're dismissing it? So I don't think their knowledge I think the jury was free to credit the evidence that was before them on that point Can lawyers be held liable for fraud for going down discovery roads where they don't think it's that necessary to the litigation in the case They make an awful lot of money with all the discovery And lawyers be held responsible for I realize it's not health care fraud, but Sure sounds like a similar situation. They do a lot of stuff that Didn't look necessary at all. But Jack Seen many cases where the trial judge seemed to think that very thing. Well, I Guess there's no there's no legal necessity rule. I guess would be the there's no There there are different rules governing an attorney and a client relationship And the rules here were very clear They were driven by the statutes and the contracts with the health care provider. So you have this very clear Language saying we'll only bill for medically necessary services I think if a client had a contract with his lawyer that says you're only gonna bill for legally necessary Services to defend my case and then the lawyer starts doing whatever he wants and billing the client I think you would have a you would have a claim especially if you have email saying I'm gonna do this on purpose I'm gonna do this absurd thing to make more money than that would be a fraud case You know if you have the intent and you have the conduct that can make it fraud And I don't think you know here we're governed by health care fraud Which has a lot of things informing people's understanding between the two parties But I think that can be true in other settings But just to take judge Sutton's hypothetical, it's not we're not it's not the doctors who are in trial here. It's the lab. So If the lawyer sends out some sort of lawyers representing a criminal defendant the lawyer sends out Some fingerprints taken from a bank counter knowing that like there's eight million people's fingerprints on there And this is not going to be useful to show that your client wasn't there so that so it's not the lawyer sending it out, it's the Fingerprint lab that would be responsible for saying not legally necessary I think so is the question could a third party to a lawyer-client relationship be also responsible for defrauding Either of those two entities. Yes. Okay, so to make that Analogy or that hypothetical similar to what you have here a lawyer asks an expert Expert I would like an opinion on X Y & Z the expert says, okay I'm gonna build the client directly for that and I have a contract with the client that says exactly what I'm gonna do for that Because here the Contract with the health insurance was not between the lawyer and the client It was between the third party the lab and the client and then that lab Does not follow the terms of that of the contract and the expectation and the understanding that they're going to provide legally necessary Services and in fact, they say on purpose we're gonna do this ridiculous thing I can't think of exactly what that would look like in this fingerprint lab scenario And that could Then that could that could I'm sorry for starting us down this or all these lawyers are really nervous I'm trying to work with you to get this analogy to fit But but there are some differences here and and just to bring it back to what? The actions were here that led to this fraud and the people responsible for those actions So the relationship here was between the five defendants and the insurance company And the insurance company had very clear Expectations of what the five defendants would be doing when they billed for their services and the jury heard Very clear testimony that what they were doing violated all of those promises And so then it brings you to their intent evidence. Did they do it on purpose? Did they think it was fine and there was evidence on both sides the intent evidence supporting the conviction is detailed in our brief It's detailed in the district court's order considering rule 29 and the jury was entitled to credit that evidence This is not an unreasonable Verdict what the jury did here is they heard all of this evidence They carefully parsed it and they decided that these 17 samples Were so egregious That nothing could explain it except except a crime except fraud and that should be upheld You know, we've we've only talked about the sufficiency of the evidence and a few of the sentencing issues I'm really limiting myself to what they brought up on direct if there is something new brought up in rebuttal Or something new you want to talk about it and just ask for the opportunity to address that Hearing nothing I will leave the rest of my time. Thank you. Okay. Thank you Thank You may have pleased the court So I'd like to just address the underlying premise of what we just heard what what the prosecution's premise is Is that the lab has a duty to determine medical necessity? That's the premise that The prosecution just said and and I think it goes to the question that you raised judge Sutton Which is you know, is this just a jury question about medical necessity? Can't the jury just decide whether this is medically necessary? You're not and the answer to that is no because there is no duty for the lab to determine medical necessity so the jury should not be in the position of answering that question and so two hypos that I'd like to address one is the chest x-ray hypo that the prosecutor raised if if a doctor just orders chest x-rays For every single patient wouldn't that be fraud? Yes on behalf of the doctor Not on behalf of the x-ray facility that ran The orders and that's critical in this case the prosecution Even if the lab thinks, huh? every single Patient three-year-old kids coming in the doctors ordering chest x-rays every time every single time and The lab goes that's weird, but I'm just a lab Off the hook correct So so no criminal responsibility there and and what can happen is what happened in this case? The provider comes in and says we're not going to pay The lab for doing that and so the duty is on the doctor in that case The criminal liability is on the doctor in that case not on the lab to second-guess the doctor same with the Example that that we discussed a few minutes ago so if a lawyer a CJA lawyer tells an investigator go run these ten witnesses and the Investigator runs their backgrounds and submits the bill to the court The investigators should get paid for that and if it's later determined that they didn't need to do it The court can determine we're not going to pay the investigator But if the underlying fraud was the lawyer was just making this up making this work up The fraud is the lawyers fraud for ordering that test or ordering the investigator to do it Not for the investigator to fulfill it and and how do we know that we know that because the office of inspector general has said It again something that the government just did not respond to so the officer office of inspector general has said Labs do not have this duty and to me when when we discuss that you know, I Think I understand what you're saying. I mean, but I still am troubled. So with the x-ray example I'm still pretty troubled with the lab that keeps running the x-rays and keep sending it off I mean, they know there's a fraud being committed. They know there's no explanation for doing this and To me that is what gets you to this problem in this case The norm here is it's not about doing it every day The norm is that you turn it around within 72 hours and they're suddenly being told don't worry about it And you know head in the sand that works for a lot of things but at some point it doesn't work anymore and Six ten months might be about where it doesn't work on medical necessity if you're a lab And that's not a terrible thing that would I mean it's terrible for your clients Not a terrible thing for the world to know in the health care profession But but I have a bunch of response to that So so but but when what would labs know labs would know that at some amorphous point? The the Medicare guidelines that the government wants to run from say you can store lab and test after 30 days Miss Smith says well, I wouldn't I personally wouldn't prosecute a particular case, but We the reason we don't leave that discretion to prosecutors We have to have an affirmative duty to prosecute someone is because we don't want to leave this amorphous We want the criminal law to be clear if you lie But it's why isn't it a lie about medical necessity you say it's not a lie because the doctor ordered it But the orders they know and the norm in the profession is the orders for 72 hours This is not the norm. So you it's it's weird to say They made me do it because that's not what is normally being made to be done. So The reason there's no Lie about medical necessity here and and this is our critical point. This is the essence of our point. The reason there's no lie Express or implied is because labs aren't asked to certify medical necessity It's not Everyone agrees. There's no view is all that you need to do is be able to point to a doctor that ordered the test That's that's that's what should establishes medical necessity and they have no independent duty about it, right? That's your basic idea, correct? If it's a valve, I'm just making the point that at some point it's quite obvious that what was medically necessary one day no longer is and a fraud is being committed and We can have a rule that says we're just going to go after the doctors But we could also have a rule that says it's at some point It's going to apply the people doing the tests I guess I would challenge that premise your honor because it's not obvious. I don't think because the question isn't You know, who is it obvious to? The government concedes there was lots of conflicting evidence about when it becomes totally useless or not The lab isn't in a position to say here's when it becomes useless or not. They have a valid order They're not asked to to certify or or to say that the test is is Going to be of use somehow. So unless the doctor revokes that prescription or unless it becomes invalid So in the opioid example, for instance, we say after a month, it's invalid. There's a clear line there here We have exactly the opposite. We have a provision that says you can archive and test after 30 days so There is no way for the lab to Certify medical necessity. We don't ask them to the Office of Inspector General says don't do it And and and there's a good reason for that Unlike pharmacists and other places the lab only gets the order and the specimen So who are we going to rely on are we going to rely on the the person who's running the test to say? Maybe this one's too far along That's why we don't require that to hold someone criminally responsible again Anthem can come in and say we're not going to pay it and and and so I think that's that's the important point here. Um, I Want to just one other point that the prosecution raised and she said and I think it's conceded here that it's the delay That the government says makes this somehow fraudulent. So there was no allegation in the indictment that the orders themselves were invalid or fraudulent and that's critical to our case here and and let me just prove the point if The lab had run those tests within 136 hours there would be no allegation from the government that there was fraud here based on the orders So the orders themselves were valid what the government saying is at some point there's too much delay and At some point the delay creates medical unnecessary services and I guess our response is The government may have an idea of when that happens But that's not up to the lab and and that's that's really our point. The last thing I'll say is this involved a minute amount of tests at the lab was doing the Number of total frozen samples after 35 days was only point one seven seven Percent of the number of tests being done and here we have, you know, 17 claims Do you know the sentencing guideline I was referring to does that make a difference here or not? If it doesn't just say it doesn't and I won't waste my time. So so To be fair. We didn't raise it. I know and it's a great it's a great point So in this case, they would have to prove that the government claim that there was a government program here anthem wasn't I understand It's still that just gets them out of one way of showing intended loss And I think her response is even if that guideline shouldn't have been applied We still put on lots of evidence that gets you in the right guideline range I think I think that's the essence of what she's saying, you know, she I'm sure you don't agree with her But how wrong is she I think I think that's pretty wrong because everyone agreed at the sentencing that the amount billed was not The amount that was going to be paid everyone agreed on that So we have to use some other figure and the contractual have intended loss your clients admitted. They hadn't read anything So agreed agreed So they wouldn't have known what was in these contracts so it the best evidence would have been what was on the bill No I think the best evidence then is what they actually Collected so they knew that they were going to collect some amount less than that was billed and here we know the exact amount that Was collected which is 3000 thoughts in the next week or so that show this really made a difference in the case. I for one would be interested Thank you judge. Thank you. If there's any other questions I'm happy to answer them. If not, thank you is a pleasure appearing before the court. Okay. Thank you. And then to the extent The defendant or defendants would file some sort of post argument Brief letter brief perhaps then the government would have opportunity to to do so as well That work. Yes, of course. Okay, great. Well, thank you counsel I Appreciate your arguments today and the case will be submitted you make